Barbara TINKER, SSN: 549–62–3102, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security Administration,[1] Defendant.

No. 00–CV–747–X.

United States District Court, N.D. Oklahoma.

July 5, 2002.

---

1. Pursuant to Fed.R.Civ.P. 25(d)(1), Jo Anne B. Barnhart, Commissioner of Social Security, is substituted as the defendant in this action.

Paul F. McTighe, Jr., Tulsa, OK, for Barbara E. Tinker, plaintiff.

Wyn Dee Baker, United States Attorney, Tulsa, OK, for Social Security Administration, Commissioner, Kenneth S. Apfel, defendant.

### *AMENDED ORDER*[2]

JOYNER, United States Magistrate Judge.

The Order entered in this case on March 25, 2002 (doc. no. 17) is hereby vacated and replaced with this Amended Order.

Now before the Court is Plaintiff's appeal of a decision by the Commissioner of the Social Security Administration ("Com-

---

**2.** This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

missioner") denying her claim for supplemental security income benefits under Title XVI of the Social Security Act.

Plaintiff alleges that she is disabled due primarily to severe pain in her low back, knees and ankles; asthma and depression. The Administrative Law Judge ("ALJ"), Steven C. Calvarese, denied benefits at step five of the sequential evaluation process used by the Commissioner to evaluate disability claims. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work. Given this RFC, the ALJ determined that Plaintiff could not return to her past relevant work as a cook and a cashier/checker, but that she retained the RFC to perform a significant number of other jobs in the national economy.

On appeal, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. The Court has meticulously reviewed the entire record in light of the error alleged by Plaintiff. The Court agrees that the ALJ's determination that Plaintiff could perform a limited range of light work is not supported by substantial evidence. Consequently, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Order.

## I. STANDARD OF REVIEW

A disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . .

42 U.S.C. § 423(d)(1)(A). A claimant will be found disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering

his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A). To make a disability determination in accordance with these provisions, the Commissioner has established a five-step sequential evaluation process.

Step one requires the claimant to establish that she is not engaged in substantial gainful activity as defined at 20 C.F.R. §§ 404.1510 and 404.1572. Step two requires the claimant to demonstrate that he has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. § 404.1521. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt.P.App. 1 (the "Listings"). *See* 20 C.F.R. § 404.1525. If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled.

If a Listing is not met, the evaluation proceeds to step four, where the claimant must establish that her impairment or combination of impairments prevents him/her from performing past relevant work. A claimant is not disabled if she can perform her past work. If a claimant is unable to perform her past work, the Commissioner has the burden of proof at step five to establish that the claimant, in light of her age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are

denied. *See*, 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140–142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); and *Williams v. Bowen*, 844 F.2d 748, 750–53 (10th Cir. 1988).

The standard of review to be applied by this Court to the Commissioner's disability determinations is set forth in 42 U.S.C. § 405(g). According to § 405(g), "the finding of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support the ultimate conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401, 91 S.Ct. 1420. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750.

To determine whether the Commissioner's decision is supported by substantial evidence, the Court will not undertake a *de novo* review of the evidence. *Sisco v. U.S. Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir.1993). The Court will not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F.Supp. 71, 72 (D.Kan.1985).

In addition to determining whether the Commissioner's decision is supported by substantial evidence, it is also this Court's duty to determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994). The Commissioner's decision will be reversed when she uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

## II. DISCUSSION

This is a step five case, and at step five Plaintiff argues that the Commissioner has the burden to establish that Plaintiff retains the RFC to perform jobs, other than her past relevant work, which exist in substantial numbers in the national economy. *Thompson v. Sullivan*, 987 F.2d 1482 (10th Cir.1993). In *Thompson*, the Tenth Circuit held that it is not the claimant's burden to prove she cannot work at any level lower than her past relevant work; it is the Commissioner's burden at step five to prove that the claimant can work at a level sufficient to perform other jobs in the national economy. *Id.* at 1491. The Tenth Circuit has held, therefore, that in a step five case the ALJ may not rely on the absence of evidence (or the absence of contraindication in the medical record) to support his conclusion that the claimant retains the RFC to perform jobs other than her past relevant work. To do so would effectively shift the Commissioner's burden at step five back to the claimant. *Id.* at 1491.

Plaintiff argues that there is no affirmative evidence, other than RFC assessments completed by non-examining SSA doctors who simply reviewed the medical record, to support the ALJ's conclusion that Plaintiff can perform the exertional requirements of light work. Plaintiff argues that under *Gatson v. Bowen*, 838 F.2d 442, 448 (10th Cir.1988), the agency's RFC assessments are of "suspect reliability" and cannot serve as substantial evidence by themselves. Plaintiff argues that, in effect, the ALJ relied on the fact that there was

nothing in the record which indicated that she could not perform the exertional demands of light work, an approach foreclosed to the ALJ at step five by *Thompson.*

The Commissioner makes several arguments in response. Initially, the Commissioner spends several pages addressing the ALJ's determination of Plaintiff's credibility. Plaintiff has not, however, directly attacked the ALJ's credibility determination in this case. Rather, the thrust of Plaintiff's argument is that even if the ALJ finds her testimony not to be fully credible, the ALJ is still required at step five to support his RFC determination with affirmative medical evidence which shows she can perform the exertional requirements of light work, an argument which finds its support in *Thompson* and *Miller v. Chater,* 99 F.3d 972, 976 (10th Cir.1996). *See* Doc. No. 13, p. 6. Pointing to *Rutledge v. Apfel,* 230 F.3d 1172 (10th Cir.2000) and two unpublished cases, the Commissioner argues that she has no such affirmative duty at step five.

In *Rutledge,* the claimant argued that the ALJ's RFC determination that he could perform medium work was not supported by substantial evidence because the ALJ did not point to affirmative evidence that the claimant could perform the standing, bending or stooping required by medium work. *Rutledge,* 230 F.3d at 1174–75. The Tenth Circuit rejected the claimant's argument because there was "no objective evidence before the agency [which provided] any basis for a conclusion that claimant could not stand, bend, or stoop as needed to perform the jobs the VE identified."

*Id.* at 1175. The Court concluded, therefore, that

> although the agency bears the burden of proof at step five to show that the claimant has the RFC to perform available work in the national economy, that burden does not require the agency to address or assess exertional requirements for which the medical record provides no evidence of an impairment or limitation.

*id.*[3] *Rutledge* is distinguishable from this case, however, because unlike in *Rutledge* there is some objective evidence in this medical record which indicates that Plaintiff cannot perform the exertional demands of light work. *R.* at 169–85, 200–206 and 216–241. Thus, whatever the ALJ's duty is at step five it has been triggered in this case.

The difference between the positions in the Plaintiff's and the Commissioner's briefs is centered on the nature of the Commissioner's burden at step five of the sequential evaluation process. Does the Commissioner have a burden of persuasion at step five, or only a burden of production? If the Commissioner has a burden of persuasion at step five, what exactly must the Commissioner prove: that there are a significant number of other jobs in the national economy and that the claimant can perform the demands of these other jobs, or just that there are other jobs in the national economy that can be performed given the RFC which the plaintiff was required to establish at step four? In other words, is the Commissioner's only evidentiary burden at step five the burden of presenting vocational evidence which shows that there are other jobs in the

---

**3.** The Tenth Circuit's holding in *Rutledge* is consistent with general Tenth Circuit precedent regarding an ALJ's duty to develop the record. ALJs are not required to become the claimant's advocate and develop the record with regard to every impairment which a claimant might conceivably have. Rather, an ALJ need only develop the record with regard to those impairments for which the medical record provides some evidence that an impairment exists. *Glass v. Shalala,* 43 F.3d 1392, 1396 (10th Cir.1994). The Court's holding in *Rutledge* is best understood as a specific application of this general rule.

national economy the claimant can perform given the RFC the claimant established at step four, or must the Commissioner also establish by affirmative medical evidence that the claimant can perform at an exertional level below that required to perform the claimant's past relevant work?

An example might help to clarify the question presented. Consider a 35–year–old claimant whose past relevant work as a structural engineer was performed at the medium exertional level. To establish a disability under the Social Security Act, is that claimant required to prove that he cannot perform even at the sedentary level (i.e., that all work activity is precluded) or only that he can no longer perform at the medium exertional level (i.e., that past work activity is precluded). In other words, if a vocational expert identifies at step five certain other jobs at, say, the light exertional level, who has the burden of establishing that the claimant can actually perform at the light exertional level: the Commissioner or the claimant? As discussed below, the Court finds that the burden lies with the Commissioner. By passing step four of the sequential evaluation process and establishing that he can no longer perform his past relevant work, the claimant has made a *prima facie* showing of disability under the Act, and the burden shifts to the Commissioner to rebut that showing by establishing that there are other jobs in the national economy and that the claimant has the ability to perform the demands of those other jobs.

■ The application of burdens of proof is particularly elusive in cases involving social security benefits because the proceedings are not designed to be adversarial. *Donato v. Secretary of DHHS,* 721 F.2d 414, 418 (2d Cir.1983). Consequently, the debate about the nature of the Commissioner's burden at step five appears likely to split the federal circuit courts of appeal, both internally and externally. The Eighth Circuit has held that it is only the burden of production which shifts to the Commissioner at step five. *See Young v. Apfel,* 221 F.3d 1065, 1069 n. 5 (8th Cir.2000).[4] On the other hand, the Second Circuit has held that the Commissioner has the burden of persuasion at step five and is required to demonstrate by affirmative medical evidence that the claimant can perform the exertional requirements required by the other jobs in the national economy identified by the VE at step five. *Curry v. Apfel,* 209 F.3d 117, 123 n. 1 (2nd Cir.2000); *Parker v. Harris,* 626 F.2d 225, 231 (2nd Cir.1980). The Sixth Circuit has held that the only burden that shifts at step five is the burden to prove that there are other jobs in the national economy that the claimant can perform (i.e., the Commissioner need only present vocational evidence and not RFC evidence). *Her v. Commissioner of Social Sec.,* 203 F.3d 388, 391–92 (6th Cir.1999).

The Second Circuit's opinion in *Curry* led the Commissioner to promulgate a specific acquiescence ruling.[5] In that ruling,

4. *But see, McPherson v, Apfel,* 110 F.Supp.2d 1162 (N.D.Iowa 2000), discussing the fact that "[d]ecisions of the Eighth Circuit Court of Appeals describing the Commissioner's burden at step five of the disability determination process as one of 'proof' are legion ... [while] [d]ecisions of the Eighth Circuit Court of Appeals describing the burden as one of 'production,' on the other hand, are so rare that the court has unearthed none besides

*Young* ... and the case upon which *Young* relies." *Id.* at 1169.

5. *See Burden of Proving Residual Functional Capacity at Step Five of the Sequential Evaluation Process for Determining Disability; Titles II and XVI of the Social Security Act,* AR 00–4(2) 2000 WL 1460367 (Sept. 11, 2000). Recently, the Commissioner instigated a rulemaking procedure designed to convert this acquiescence ruling into a regulation which

the Commissioner states that she interprets the Social Security Act and her regulations as requiring a claimant to bear the "burden of proving disability by furnishing medical and other evidence [the SSA] can use to reach conclusions about his or her impairment(s), and its effect on his or her ability to work on a sustained basis." *Id.* at *2. In her acquiescence ruling, the Commissioner states that the only obligation she has to produce affirmative medical evidence is encompassed within her obligation "to make every reasonable effort to develop a claimant's complete medical history including to arrange for consultative examinations, if necessary." *Id.* It is the Commissioner's opinion in her acquiescence ruling that the burden of persuasion does shift at step five, but that all she is required to prove at step five is that there are jobs in the national economy which the claimant can perform, given the RFC which the claimant was required to establish at step four. *Id.* In other words, the Commissioner believes that at step five she is only required to present "vocational evidence" showing that there are jobs in the national economy that a person with the claimant's RFC can perform. *Id.*

The Commissioner concludes her acquiescence ruling as follows:

> [U]nder our interpretation of our regulations, we do not have the burden at step five (or step four) to prove what the claimant's RFC is. We assess RFC one time, after concluding that a claimant's

impairment(s) is "severe" but does not meet or equal a listing in the Listing of Impairments in appendix 1 of subpart P of 20 C.F.R. part 404. Although we use this assessment at steps four and five of the sequential evaluation process, we make the assessment at a step in the process at which the claimant is responsible for proving disability.

*Id.* Because the Commissioner believes that the Second Circuit has expanded her "burden of proof at step five beyond the issue of work which exists in significant numbers to the assessment of RFC ... [and] held that, in determining disability at step five, [the Commissioner has] the burden of proving that a claimant retains the RFC to perform other work ...," the Commissioner issued her acquiescence ruling to limit the effect of the Second Circuit's decision to disability determinations made only in that circuit. *Id.* Thus, the Commissioner takes a position which is between that of the Eighth and Second Circuits and is consistent with the Sixth Circuit. While the Commissioner agrees, unlike the Eighth Circuit, that the burden of persuasion and not just the burden of production shifts at step five, she disagrees with the Second Circuit about what exactly she is required to prove at step five.

Resolution of who has the burden of proof at step five is of consequence in this case given the paucity of medical evidence in the record.[6] If Plaintiff has the bur-

---

counteracts the Second Circuit's ruling in *Curry*. *See* Notice of Proposed Rulemaking, 67 FR 39904–01, 2002 WL 1273398 (June 11, 2002).

**6.** There is one consultative medical report in the file from Jerry D. First, M.D. *R.* at 169–77. His report, however, is virtually useless because he opines that "[b]ased upon subjective evidence without significant objective evidence, the patient would appear capable of sedentary activity at this time." *R.* at 173.

There is one pulmonary function study in the file, but no doctor provides any interpretation of its findings or their effect on Plaintiff's ability to perform work-related activities, although the report itself states that the test results indicate moderate obstructive lung defect. *R.* at 200–206. There are also sporadic treatment notes from Morton Clinic which do not clearly establish Plaintiff's functional limitations. *R.* 216 241. The only other evidence in the file are RFC assessments performed by

den to establish her RFC at step four, and that RFC is then to be used at step five, the Court would find that she has failed to establish that she cannot perform the limited range of light work required by the jobs identified by the VE at step five. Plaintiff has not presented sufficient medical evidence to establish that she has limitations which are severe enough to prevent her from performing the jobs identified by the ALJ at step five. If, however, the Commissioner has the burden of persuasion at step five to show that Plaintiff has the ability to perform the demands of the other jobs identified by the VE at step five, the Court would find that the Commissioner has not carried her burden because there is no affirmative medical evidence in the record which clearly establishes that Plaintiff can perform the exertional demands of the jobs identified by the VE at step five. The Court finds, therefore, that its resolution of the issue regarding the Commissioner's burden at step five is determinative of this appeal.

 The Tenth Circuit has not directly addressed the issue of the Commissioner's burden in the terms set forth above. It is, however, settled law in this circuit that the burden of proving a disability within the meaning of the Social Security Act rests with the claimant. *See* 42 U.S.C. § 423(d). However, it is also settled law

in this circuit that once a claimant makes a *prima facie* showing of disability that prevents his engaging in his prior work activity, the burden shifts to the Commissioner to show that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy. *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir.1984).[7] There are also a legion of Tenth Circuit unpublished opinions, as there are in the Eighth Circuit, which indicate in passing, without analysis, that it is the burden of proof, which shifts to the Commissioner at step five.[8] The Tenth Circuit has also decided *Thompson* and *Miller,* which require the Commissioner to point to affirmative medical evidence to sustain her burden at step five. *Thompson,* 987 F.2d at 1491; *Miller,* 99 F.3d at 976.

The Commissioner cites two unpublished decisions by the Tenth Circuit which hold that the claimant has the burden of establishing her RFC at step four, and that the RFC she establishes at step four is carried forward to step five, and that the ALJ has no burden in connection with the claimant's RFC at step five. *See Jones v. Apfel,* 2000 WL 3875, at *1, 202 F.3d 282 (10th Cir.2000); and *Shaffer v. Apfel,* 1998 WL 314376, at *2, 149 F.3d 1191 (10th Cir. 1998). In *Shaffer,* the Tenth Circuit held that "[t]he RFC determination is initially

---

non-examining SSA doctors. *R.* 195–98 and 207–214. The Court agrees that, even though the non-examining doctors in this case did give minimal explanations for their conclusions, these types of assessments are entitled to little weight and are often of "suspect reliability." *See Gatson v. Bowen,* 838 F.2d 442, 448 (10th Cir.1988).

**7.** *See also Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir.1991) (citing *Channel*); *Salas v. Califano,* 612 F.2d 480, 482 (10th Cir. 1979); *Nielson v. Sullivan,* 992 F.2d 1118, 1120 (10th Cir.1993); and *Broadbent v. Harris,* 698 F.2d 407, 414 (10th Cir.1983) (once

claimant makes *prima facie* case, Commissioner has burden to rebut that case with evidence of her own).

**8.** *See, e.g., Wilson v. Sullivan,* 1991 WL 35284, at *2, 930 F.2d 36 (10th Cir.1991); *Hereden v. Apfel,* 1999 WL 401711, at *1, 185 F.3d 874 (10th Cir.1999); *Rutherford v. Apfel,* 1999 WL 651392, at *1, 189 F.3d 478 (10th Cir.1999); *Large v. Apfel,* 1999 WL 651390, at *1 n. 1, 189 F.3d 478 (10th Cir.1999); *Mose v. Apfel,* 1999 WL 1063829, at *1, 201 F.3d 448 (10th Cir.1999); *Baugh v. Apfel,* 1999 WL 410307, at *2, 185 F.3d 873 (10th Cir.1999).

part of the step four evaluation and, thus, is made before the burden of proof shifts at step five." *Shaffer*, 1998 WL 314376, at *2, 149 F.3d 1191. In *Jones*, the Tenth Circuit held that the claimant's RFC "is determined once, in detail, at step four . . . [and if] the evaluation of the claim proceeds to step five, the same RFC finding is considered along with other factors to determine whether the claimant can perform work other than his or her past relevant work." *Jones*, 2000 WL 3875, at *1, 202 F.3d 282. These unpublished opinions are in conflict with the spirit of the Tenth Circuit's published opinions in *Thompson* and *Miller* and with the legion of unpublished decisions identified above which indicate that the burden of proof does shift to the Commissioner at step five to establish that the claimant retains the ability to perform other jobs in the national economy. The Court is, therefore, left with conflicting guidance in this area.

The Commissioner also makes reference to another unpublished Tenth Circuit decision: *Wells v. Apfel*, 1998 WL 654398, 161 F.3d 19 (10th Cir.1998). In *Wells*, the claimant argued that in violation of the Tenth Circuit's holding in *Thompson*, the ALJ erred by inappropriately shifting the burden to her at step five to show that she could not perform sedentary work. The Court in *Wells* rejected the claimant's ar-gument, finding that unlike the claimant in *Thompson* the claimant in *Wells* had not presented objective medical evidence of an impairment (i.e., persistently high blood sugar levels). The plaintiff in this case agrees with the Tenth Circuit's holding in *Wells* that she has the burden to present objective medical evidence of an impairment. However, the question presented by this case is who, once an impairment is established, has the burden of showing how that impairment affects a claimant's ability to perform other work in the national economy at step five of the sequential evaluation process. That issue was not addressed by the Court in *Wells*.

■ The Court chooses to follow the Tenth Circuit's published opinions in *Thompson* and *Miller*,[9] the numerous unpublished opinions cited above, and the settled law on burden shifting, all of which establish that the burden of proof shifts to the Commissioner at step five. The Court is also persuaded by the Supreme Court's decision in *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) wherein the Supreme Court holds that the burden of proof, including the burden of establishing that the claimant is "able" to perform other work in the national economy, shifts to the Commissioner at step five.[10] By establishing that she can-

---

**9.** The Commissioner argues that the Court should follow *Jones* and *Shaffer* over *Thompson* and *Miller* because *Jones* and *Shaffer* were more recently decided. *Jones* and *Shaffer* are, however, unpublished opinions with no precedential value. The Court is, therefore, compelled when in doubt to follow *Thompson* and *Miller* which are binding precedent. The inconsistencies between *Jones* and *Shaffer* and *Thompson* and *Miller* will have to be resolved by the Tenth Circuit itself.

**10.** If the Court were writing on a clean state, it would adopt the position of the Second Circuit which it finds more convincing. *See Young*, 221 F.3d at 1069, n. 5. That is, the

Court would find that at Step Five of the sequential evaluation process, the only burden which shifts to the Commissioner is the burden of production to come forward with evidence of other jobs available in the national economy, and the claimant would have the burden of proving at step five that she cannot perform those other jobs identified by the Commissioner. Such an approach alleviates the unfairness which would result if a lay claimant were required to prove that there are no other jobs available in the economy which he can perform because such a showing would require a level of expertise in vocational matters not possessed by most claimants; an expertise the Commissioner is much

not perform her past relevant work, the claimant has established a *prima facie* case of disability and the burden then shifts to the Commissioner to establish that the claimant is able to perform other jobs in the national economy. Thus, at step five the Commissioner is required to show through affirmative evidence both that there are in fact a substantial number of other jobs in the national economy and that the claimant can perform the exertional and non-exertional demands of those other jobs.

The Court appreciates the fact that recognizing a shifting burden of proof at step five creates some confusion about how and when RFC is to be determined. The Court's prior unpublished decision in *Noel v. Apfel*, 98–CV–828 (N.D.Okla. Sep. 23, 1999), which has been cited by the Commissioner, reflects this confusion. Under the Commissioner's regulations, RFC is determined at step four, when the claimant still has the burden of proof, and that RFC is to be used at steps four and five.[11] As defined by the Commissioner, RFC is the "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.... RFC does not represent the least an individual can do ..., but the most." *Assessing Residual Functional Capacity in Initial Claims*, SSR 96–8p, 1996 WL 374184, at \*2 (July 2, 1996). *See also* 20 C.F.R. § 416.945(a). The ultimate responsibility for determining a claimant's RFC

rests with the ALJ, and his determination must be supported by substantial evidence. 20 C.F.R. § 416.956; *Harris v. HHS*, 821 F.2d 541, 543 (10th Cir.1987).[12]

As discussed, the Commissioner argues, and the Tenth Circuit has held in two unpublished decisions, *Jones* and *Shaffer*, that RFC is determined at, or just prior to, step four because the Commissioner's regulations require RFC to be used at step four. Because this determination occurs at step four, prior to the shift in burden from the claimant to the Commissioner, the Commissioner argues that it is the claimant who has the burden of establishing RFC. The Commissioner has, however, defined RFC as the most a claimant can do. Thus, the Commissioner is arguing that the claimant has the burden to prove the most, not the least, she is capable of doing. That would be an odd burden indeed.

The way in which the Commissioner's regulations actually direct that RFC be used supports the Court's conclusion that all a claimant need do is establish her inability to engage in past relevant work. The Commissioner's regulations state as follows:

> At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy" work because the first consideration at this step is

---

more capable of developing. *See, e.g., Her v. Commissioner of Social Sec.*, 203 F.3d 388, 391 (6th Cir.1999). The Court is not, however, writing on a clean slate, and finds itself compelled by Tenth Circuit precedent to reach the conclusion it has.

11. *See* 20 C.F.R. §§ 416.960, 416.961 and 416.920(e) & (f). *But see* 20 C.F.R. § 416.905(a) and *Williams v. Bowen*, 844 F.2d 748, 751–52 (10th Cir.1988) (suggesting that RFC is relevant only at step five).

12. "RFC is an **administrative assessment** of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96 8p, 1996 WL 374184, at \*2 (emphasis added).

whether the individual can do past relevant work as he or she actually performed it. RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.

At step 5 of the sequential evaluation process, RFC must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the individual can do. However, in order for an individual to do a full range of work at a given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individuals capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level.

SSR 96–8p, 1996 WL 374184, at *2.

SSR 96–8p establishes that RFC is not the type of rigidly static determination as suggested by the Commissioner's argument in this case or by the Tenth Circuit's unpublished decisions in *Jones* and *Shaffer*. Rather, RFC determinations are a bit more fluid. At step four, RFC should be expressed in terms of functional limitations to determine whether those limitations prevent a claimant from performing her past relevant work. At step five, RFC should be expressed in terms of the maximum exertional level which the claimant can perform to determine whether there are other jobs in the national economy which Plaintiff can perform given that retained, maximum exertional level. Such an approach fits squarely within the allocation of burdens discussed above. The claimant must demonstrate by pointing to affirmative medical evidence that her medically determinable impairments produce limitations which prevent her from performing her past relevant work. The burden then shifts to the Commissioner to point to affirmative medical evidence to establish that claimant can perform at an exertional level below that required by her past relevant work, and that there are a significant number of jobs in the national economy which the claimant can perform at that lower exertional level. To the extent this Court's prior unpublished opinion in *Noel* suggests otherwise, the Court chooses not to follow it.

■ Given that the Court finds the Commissioner to have the burden of proof at step five, the Court finds that the Commissioner has not sustained that burden in this case. In his report, Dr. First opines that Plaintiff can only do sedentary work. His report does not, therefore, provide any support for the ALJ's conclusion that Plaintiff could perform the exertional demands of light work. Also, as discussed above, Dr. First's report is entitled to little weight given that it is based on subjective findings and not objective medical evidence. The only evidence which directly supports the ALJ's conclusion that Plaintiff could perform the exertional demands

of light work are the two RFC assessments prepared by non-examining SSA doctors, and these reports are entitled to even less weight than Dr. First's report. *Gatson*, 838 F.2d at 448. The Commissioner has, therefore, failed to demonstrate that there is affirmative medical evidence in the record to support the ALJ's conclusion that Plaintiff can perform the exertional demands of the other jobs the VE identified at step five. This case is, therefore, remanded so that the Commissioner may obtain a more complete consultative examination which clearly evaluates Plaintiff's ability to perform the exertional demands of work activity.

## CONCLUSION

The Commissioner's decision denying Plaintiff's application for benefits under Title XVI of the Social Security Act is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Order.

IT IS SO ORDERED.